UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOHN F. SKELTON, III, and §
DYANN SKELTON, §
§
Appellants, §
§
v. § CIVIL ACTION NO. 3:13-CV-4226-B
§
URBAN TRUST BANK, and §
CENLAR FSB, §
§
Appellees. §

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Appellants John and Dyann Skelton's (the "Skeltons") appeal from an

order of the bankruptcy court granting summary judgment and entering final judgment in favor of

Appellees Urban Trust Bank ("Urban Trust") and Cenlar FSB ("Cenlar"). Having conducted a *de*

*novo* review of the rulings of the bankruptcy court as well as the briefing of the parties, and the

applicable law, the Court is of the opinion that the order and judgment of the bankruptcy court

should be and hereby are **AFFIRMED**.

## I.

## BACKGROUND

This appeal arises from the bankruptcy court's determination that Appellee Urban Trust

holds title to a promissory note (the "Note") signed by Appellant John Skelton ("Skelton"). Skelton,

who admittedly defaulted on the Note, and his wife, Appellant Dyann Skelton, initiated these

proceedings in an effort to prevent foreclosure of the secured property. The bankruptcy court

rejected the Skeltons' contention that Urban Trust is not entitled to enforce the Note—a decision the Skeltons now challenge on appeal.

The Note at issue in this appeal was originally signed by Skelton on May 4, 2007. The $1,043,500 interest-only period fixed Note was made payable to Greenpoint Mortgage Funding, Inc. ("Greenpoint") and secured by a Deed of Trust, which both Skeltons signed, also on May 4, 2007. *See* Doc. 1, R. at 1368-91. The Deed of Trust was, in turn, secured by real property located at 5020 Abbot Avenue, Highland Park, Texas (the "Property"). *Id.* The Deed of Trust named Mortgage Electronic Registration System ("MERS") as Greenpoint's nominee. *Id.* at 1373. The Note, however, does not refer to MERS or provide that MERS has any rights to the Note. *Id.* at 1368. And the Deed of Trust does not indicate that MERS had any right to transfer the Note made payable to Greenpoint. *Id.* at 1373.

On December 18, 2008, MERS, as nominee for Greenpoint, assigned the Deed of Trust to MCMCAP Homeowners' Advantage Trust, III ("MCMCAP"), which was recorded on January 21, 2009. *Id.* at 1006. The evidence of the Note's transfer is less clear. No party has produced an original allonge[1] on which the Note from Greenpoint to MCMCAP was transferred, and indeed, the bankruptcy court noted that "there is some question of whether an allonge from Greenpoint to MCMCAP was ever actually attached to the Note." *Id.* at 14. Nevertheless, there is some evidence of the Note's transfer from Greenpoint to MCMCAP, including an allonge executed in blank by Greenpoint on or about August 1, 2011 and a number of affidavits. *Id.* at 1091, 1098, 1329-30.

---

[1] "Allonge" generally refers to "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." BLACK'S LAW DICTIONARY (9th ed. 2009).

On July 16, 2009, Urban Trust purchased the Note from MCMCAP along with eighteen other mortgages. *Id.* at 1035-37, 1039, 1070-71. MCMCAP subsequently transferred possession of the Note with two signed, undated allonges—one indorsed in blank and one to the order of Urban Trust—to Urban Trust, who received the Note, via Federal Express delivery, on July 17, 2009. *Id.* at 726-27, 983-84, 1091-95. On May 13, 2010, a Corporate Assignment of Deed of Trust transferring the Deed of Trust from MCMCAP to Urban Trust was recorded in Dallas County. *Id.* at 1007. Sometime after, Urban Trust named Appellee Cenlar as the Note's servicer. *Id.* at 1021-22.

Urban Trust somehow lost the Note after receiving it from MCMCAP. *Id.* at 1038-39. David Mady, Treasurer of Urban Trust, executed a Lost Note Affidavit on October 26, 2009 with a true and correct copy of the Note in which he established Urban Trust had diligently searched for the Note. *See id.* at 1038-69. Mady avers that the Note's original copy is believed to have been accidentally shredded. *Id.* at 1040.

In the fall of 2010, Skelton requested a copy of the Note and his loan file, but Urban Trust, having lost the Note, instead sent Skelton a letter, dated November 19, 2010, which included a copy of the Lost Note Affidavit executed October 26, 2009. *Id.* at 1038-40, 1332. Soon after, Skelton tried to refinance the Note by arranging for Pavilion Bank to purchase the Note from Urban Trust. *Id.* at 1158, 1333. That sale, however, never occurred.

Beginning on August 1, 2010 and for all relevant months thereafter, Skelton failed to pay the monthly installments of interest due under the Note. *Id.* at 1009, 1011-13, 1176. Because of this, Urban Trust mailed Skelton a notice of default on October 12, 2010 by certified mail. *Id.* at 1021-24. After Skelton failed to cure the default, Urban Trust gave Skelton notice on March 14, 2011 of the acceleration of the Note, that the Note's balance was due and payable in full, and that the Property

-3-

would be foreclosed on April 5, 2011. *Id.* at 1009, 1011-13, 1073-90, 1259, 1289-1291.

The day before the scheduled foreclosure—April 4, 2011—the Skeltons commenced a state court lawsuit alleging, *inter alia,* that Urban Trust could not foreclose on the Property and did not have the right to enforce the Note. *Id.* at 106-114. The state court enjoined Urban Trust from foreclosing on the Property until Urban Trust either produced the loan file and original Note or proved its right to enforce the Note in a non-jury trial set for July 16, 2012. *See id.* at 7-8 (bankruptcy court's discussion of state court proceedings). Days before the scheduled trial date—July 7, 2012—the state court action was stayed upon receiving notice that Skelton had filed for Chapter 11 bankruptcy. *Id.* at 510. Urban Trust subsequently removed the Skeltons' state court claims to the U.S. Bankruptcy Court for the Northern District of Texas where Skelton's Chapter 11 petition had been filed. *Id.* at 85.

On June 11, 2013, Urban Trust moved for summary judgment on all four of the Skeltons' claims, including quiet title, declaratory judgment and injunction, fraudulent misrepresentation, and negligent misrepresentation.[2] *Id.* at 524-531 (Am. Compl.), 588 (Mot. Summ. J.). The bankruptcy court held a hearing regarding the motion on July 15, 2013, at the end of which the court granted summary judgment on the fraudulent and negligent misrepresentation claims. *Id.* at 4. Then, after receiving supplemental briefing on the two remaining claims—quiet title and declaratory judgment— the bankruptcy court issued a memorandum order and opinion on August 5, 2013 granting summary

---

[2] As detailed by the bankruptcy court, the Skeltons' original state court petition included only the first two causes of action (quiet title and declaratory relief); the other two claims (fraudulent and negligent misrepresentation) were later added by John Skelton's attorney, who did not represent Dyann Skelton at the time, after the Skeltons' original attorney withdrew. R. at 8-9. Thus, Dyann Skelton is technically only a party to the two original claims—which "essentially mirror Skelton's first two [amended] claims"—while Skelton represents all four claims asserted against Urban Trust. *Id.* at 9, 10.

judgment on those two claims and elaborating on its previously stated conclusions regarding the two misrepresentation claims. *See id.* at 11-21. On November 8, 2013, the bankruptcy court entered final judgment against the Skeltons, which granted Urban Trust a judicial foreclosure on the Property. Doc. 13, Unopposed Mot. Consolidate Cases 2.

The Skeltons filed timely notices of appeal regarding the bankruptcy court's summary judgment order and final judgment. *See id.*; R. at 1-3. In their brief, the Skeltons raise a number of issues related to the bankruptcy court's order granting summary judgment on the quiet title and declaratory relief claims, and by extension, its final order permitting Urban Trust to foreclose on the Property. *See* Doc. 16, Appellants' Br. 2 (Statement of the Issues 1-4). They also submit one issue concerning the bankruptcy court's conclusion that summary judgment was appropriate with respect to Skelton's fraudulent and negligent misrepresentation claims. *Id.* (Statement of the Issues 5). Urban Trust and Cenlar responded to these issues in a joint brief filed April 2, 2014. Doc. 20, Appellees' Brief. The Skeltons filed a reply (doc. 23) on April 28, 2014, rendering this appeal ripe for resolution.

## II.

## JURISDICTION

A court "'must always be sure of [its] appellate jurisdiction and, if there is doubt, [it] must address it, *sua sponte* if necessary.'" *In re Yazoo Pipeline Co., L.P.*, 746 F.3d 211, 214 (5th Cir. 2014) (quoting *Castaneda v. Falcon*, 166 F.3d 799, 801 (5th Cir. 1999)) (finding no appellate jurisdiction over district court's ruling in bankruptcy appeal). The Skeltons appeal the bankruptcy court's order and final judgment disposing of all claims in Adversary Case No. 12-3184. The bankruptcy court had jurisdiction over the underlying adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. As that court's summary judgment order and final judgment resolved all claims raised in the adversary

proceeding, this Court is now vested with jurisdiction over the appeal of that order and judgment pursuant to 28 U.S.C. § 158(a)(1).

## III.

### STANDARD OF REVIEW

This is an appeal from the bankruptcy court's summary judgment order and final judgment entered in a core proceeding pursuant to 28 U.S.C. § 157(b). "'When reviewing a bankruptcy court's decision in a core proceeding, a district court functions as a appellate court and applies the standard of review generally applied in federal court appeals.'" *In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 293 (5th Cir. 2013) (quoting *Matter of Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992)). The federal appellate standard of review in these circumstances, where the lower court grants summary judgment, is *de novo*. *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994); *see also Hosack v. I.R.S.*, 2007 WL 959034, at *2 (N.D. Tex. Mar. 30, 2007) (citing *Burgos* and applying *de novo* standard in reviewing bankruptcy court's grant of summary judgment).

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. SmithKline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.; Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Once the movant has met its burden, the burden shifts to the non-movant, who then must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

## IV.

## ANALYSIS

There are two issues in this appeal. First, did the bankruptcy court err in finding that no genuine dispute exists regarding Urban Trust's ownership and right to enforce the Note? Second, did the bankruptcy court err in granting summary judgment on Skelton's fraudulent and negligent misrepresentation claims? The Court addresses each issue, in turn, below.

### A.     Is Urban Trust Undisputedly Entitled to Enforce the Note?

For an obligee to recover on a promissory note, Texas law requires the obligee to establish that: (1) the note exists; (2) the obligor signed the note; (3) the obligee is entitled to enforce the note; and (4) a certain balance is due and owing under the note. *Martin v. New Century Mort. Co.*, 377 S.W.3d 79, 84 (Tex. App. 2012) (citing *Wells Fargo Banks, N.A. v. Ballestas*, 355 S.W.3d 187, 191 (Tex. App. 2011)). The Skeltons only address the third requirement in this appeal—whether Urban Trust is entitled to enforce the Note. *See* Appellate Br. 8 ("[T]he Skeltons are not asserting the rejected 'show me the note' theory, but instead assert that [Urban Trust], as a transferee who is seeking to enforce a lost note, must demonstrate a proper chain of title for the underlying Note.").

With respect to the third requirement, the Skeltons argue that Urban Trust is not entitled to enforce the Note because it cannot adequately "demonstrate a proper chain of title for the underlying Note." *Id.* at 8. The Skeltons point to two "gaps" in the Note's chain of title. First, the Skeltons contend that "there was no proof that Greenpoint (the original lender) executed an allonge, attached it to the Note, and delivered the [N]ote with the attached allonge to MCMCAP," creating the first gap in the chain. *Id.* at 11. Second, they claim that the evidence does not sufficiently demonstrate that "the purported allonges from MCMCAP to [Urban Trust] . . . were ever 'affixed' to the Note, as required by" law, producing a second chain of title gap. *Id.* at 12. Moreover, the Skeltons argue that Urban Trust cannot enforce the Note under § 3.309 of the Texas Business and Commercial Code, which permits enforcement of lost notes under certain circumstances, because Urban Trust—at the time it lost the Note—"did not have a valid indorsement (via an allonge or otherwise) that transferred the Note in its favor." *Id.* at 19-20. Given these gaps in the "record evidence," the Skeltons submit that the bankruptcy court erred in granting summary judgment in the Appellees' favor. *Id.* at 20.

Urban Trust counters that the Skeltons' contentions miss the mark, and in the process, they "mischaracteriz[e] the law with regard [to] Urban Trust's right to enforce the Note and foreclose the [D]eed of [T]rust lien securing its payment." Appellees' Br. 2. Urban Trust asserts that even though it lacks "physical possession of the Note," it is, nonetheless, "entitled to enforce the Note" under Texas law. *Id.* at 8. This is because, according to Urban Trust, it qualifies as "'a person entitled to enforce' the instrument pursuant to § 3.309, which expressly governs enforcement of a lost, destroyed or stolen instrument." *Id.* at 8-9. Urban Trust contends that it satisfies § 3.309's requirements through uncontroverted affidavits and supporting documents evidencing the Note's transfer of

-8-

ownership from Greenpoint to MCMCAP to Urban Trust. *Id.* at 9-14. It says that the Skeltons "could not and did not adduce evidence" contradicting Urban Trust's rights, and therefore, the bankruptcy court was correct in granting Urban Trust summary judgment. *Id.* at 22. The Court agrees, and for the reasons that follow, it affirms the bankruptcy court's conclusion regarding Urban Trust's right, as a matter of law, to enforce the Note.

1.    The Three Avenues of Promissory Note Enforcement Under Texas Law

Under Texas law, persons entitled to enforce an instrument, such as a promissory note, include: "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3.309 or 3.418(d)." TEX. BUS. & COM. CODE § 3.301.

Urban Trust's consistent position in this litigation has been that it is "a person not in possession of the instrument who is entitled to enforce the instrument pursuant to [§] 3.309"—the third potential avenue of instrument enforcement under Texas law.[3] *Id.* This position is completely acceptable, because "Texas law makes clear that a party does not have to be a holder," or a nonholder in possession with the rights of a holder, "to enforce an instrument." *Bittinger v. Wells Fargo Bank NA*, No. H-10-1745, 2011 WL 5415664, at *8 (S.D. Tex. Nov. 8, 2011). Nonetheless, all three paths to entitlement under § 3.301 are relevant to the disputes raised in this appeal, and therefore, each warrants discussion below.

The first avenue of enforcement is attaining the status of the instrument's "holder." Holder

---

[3] *See* Appellees' Br. 8 ("Urban Trust was a 'person entitled to enforce' the instrument pursuant to § 3.309."); R. at 13 (Mem. Op. & Or.) ("[Urban Trust] is moving for summary judgment on the grounds that they are 'a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3.309.").

is defined as "the person in possession of a negotiable instrument that is payable either to bearer or an identified person that is the person in possession." TEX. BUS. & COM. CODE § 1.201(b)(21)(A). In other words, "[a] person can become a holder of an instrument when the instrument is issued to that person; or he can become a holder by negotiation." *Leavings v. Mills,* 175 S.W.3d 307, 309 (Tex. App. 2004) (citing TEX. BUS. & COM. CODE § 3.201 cmt. 1 (2002)). For instruments made "payable to an identified person," that person becomes a "holder by negotiation" through a "transfer of possession of the instrument and its indorsement by the holder." TEX. BUS. & COM. CODE § 3.201(b) (2013). For the indorsement to be legally acceptable, it "must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed to it as to become part of it," such as a firmly affixed allonge. *Leavings,* 175 S.W.3d at 309 (citing *Jernigan v. Bank One Tex., N.A.,* 803 S.W.2d 774, 776 (Tex. App. 1991)). A person who is not the original holder cannot attain the status of holder by negotiation if the instrument "lacks a written indorsement and proof of the chain of title." *Id.* (citing *Jernigan*, 803 S.W.2d at 309).

Even if a party fails to qualify as a "holder," it may still prove entitlement if it takes "possession of the instrument [and] the rights of a holder." TEX. BUS. & COM. CODE § 3.301. This includes nonholders who "acquired rights of a holder . . . under Section 3.203(a)." *Id.* § 3.301 cmt. Section 3.203, discussed in more detail below, covers transfers. A properly effectuated transfer under § 3.203(a) "vests in the transferee any right of the transferor to enforce the instrument." *Id.* § 3.203(b). So for example, if a person acquires an instrument from a holder who has not properly indorsed the instrument, that person will not attain holder status; but so long as the person receives the instrument via a § 3.203(a) transfer, that person will qualify as a nonholder in possession who has the rights of the holder (i.e., the transferor) to enforce the instrument.

-10-

The last avenue of enforcement under § 3.301—the avenue Urban Trust relies on—pertains to, among other things, persons who have lost or destroyed the instrument they seek to enforce. Specifically, persons lacking "possession of the instrument," may still enforce the instrument if they are "entitled to enforce the instrument pursuant to Section 3.309," which permits enforcement of lost, destroyed, or stolen instruments in certain circumstances. *Id.* § 3.301(iii). To establish entitlement under § 3.309, Urban Trust must show: (1) it "was entitled to enforce the instrument when loss of possession occurred; . . . (2) the loss of possession was not the result of a transfer by [Urban Trust] or a lawful seizure; and (3) [Urban Trust] cannot reasonably obtain possession of the instrument because the instrument was destroyed [or] its whereabouts cannot be determined . . . ." *Id.* § 3.309(a). Here, the latter two requirements of § 3.309 are not in dispute. *See* Appellants' Br. 19-20. In other words, the Skeltons do not contest that Urban Trust's "loss of possession was not the result of a transfer . . . or a lawful seizure" or that Urban Trust "cannot reasonably obtain possession of the [Note] because [it] was destroyed"—most likely shredded—or at the very least, "its whereabouts cannot be determined." Tex. Bus. & Com. Code § 3.309(a)(2) & (3). Thus, the Court need only consider the first prong of § 3.309(a).

The Skeltons primarily challenge this first prong—whether Urban Trust was entitled "to enforce the [Note] when loss of possession occurred"—by questioning the sufficiency of the evidence related to the Note's transfer from (i) Greenpoint to MCMCAP and (ii) MCMCAP to Urban Trust. "An unexplained gap in the chain of title may present a fact issue on the question of ownership." *Martin v. New Century Mort. Co.*, 377 S.W.3d 79, 85 (Tex. App. 2012) (citations omitted). Thus, the Court must address each of these purported gaps, in turn, below.

2.    The Note's Transfer from Greenpoint to MCMCAP

It is undisputed that the Note was originally issued by Skelton and made payable to Greenpoint, who thereby became the Note's "holder." *See* R. at 1368-1371 (copy of the Note). As mentioned before, MERS was not identified in the Note, but was made Greenpoint's nominee in the Deed of Trust. *See id.* at 1374 (naming MERS beneficiary in Deed of Trust). MERS assigned the Deed of Trust to MCMCAP on December 18, 2008, which was recorded on January 21, 2009. *Id.* at 1006 (Assignment of Deed of Trust). While Urban Trust claims that MCMCAP also became the "*holder* of the [Note]" at this time, it has been unable to produce a direct indorsement or the original allonge transferring the Note from Greenpoint to MCMCAP. Appellee Br. 9 (emphasis added).

Seizing on this purported "fatal defect in the chain of title," the Skeltons assert that summary judgment in this case was inappropriate, because Urban Trust "was unable to present any proof that Greenpoint executed an allonge, attached it to the Greenpoint Note, and delivered the [N]ote with the attached allonge to MCMCAP." Appellate Br. 13. The Court agrees with the Skeltons that this lack of proof is "fatal" to the extent Urban Trust intends to show, as a matter of law, that MCMCAP was the Note's *holder*. But "a party who fails to qualify as a 'holder' for lack of an indorsement may still prove that it owns [and is entitled to enforce] the note" under one of § 3.301's alternative avenues of enforcement discussed above. *Martin*, 377 S.W.3d at 85 (citing *Leavings,* 175 S.W.3d at 309; TEX. BUS. & COM. CODE § 3.301 cmt.).

Key to this analysis is that Urban Trust can show that MCMCAP was entitled to enforce the Note as a nonholder in "possession of the instrument" who "acquired [the] rights of a holder . . . under Section 3.203(a)," which as mentioned above, relates to the transfer of instruments. TEX. BUS. & COM. CODE § 3.301(ii) & cmt. Under § 3.203(a), "[a]n instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery

-12-

the right to enforce the instrument." *Id.* § 3.203(a). If a transfer is made in accordance with § 3.203(a), it "vests in the transferee any right of the transferor to enforce the instrument." *Id.* § 3.203(b).

Here, Urban Trust submitted a number of evidentiary items demonstrating that Greenpoint, a holder at the time, transferred the Note to MCMCAP in accordance with § 3.203, thereby giving MCMCAP the right to enforce the Note as a nonholder in possession with the rights of a holder. In an affidavit submitted by Urban Trust, Greenpoint's Vice President Mary Sharp avers that Greenpoint "did not hold or service certain loans after closing and transferred the loans to investors soon after the loan closed," which suggests that its transfers were made with the intent to give transferees the right to enforce. R. at 1096. She further states that it was Greenpoint's practice "to endorse the transferred note[s] on the blank back of the note," which "from time to time" created issues for "persons to whom a loan has been transferred [who] lose the note and do not have a copy of the reverse side of the note." *Id.* In such circumstances, Sharp explains that Greenpoint, "[i]n the regular course of business [and] upon the request of the owner of the loan, [] would execute an allonge in blank with specific reference to a particular note in order to establish the chain of title of a copy of the lost note." *Id.* And as proof that this is what happened in this case, Urban Trust presented an allonge executed in blank by Greenpoint's Sharp on August 11, 2011 that pertains to the Note. *Id.* at 985. In another affidavit, Urban Trust's Vice President explains that it requested and received this blank allonge as "proof of the transfer of the [] Note from" Greenpoint after the original copy of the Note was lost. *Id.* at 976. Additional evidence of the transfer includes an affidavit from MCMCAP's representative claiming it acquired possession and ownership of the Note's from Greenpoint, Skelton's testimony that MCMCAP told him in early 2009 that it had purchased and

-13-

owned his Note, and affidavits of Urban Trust's representatives stating Urban Trust conducted extensive due diligence and confirmed MCMCAP's ownership of the Note before closing the subsequent deal. *See id.* at 1039, 1070-72, 1091, 1098, 1329-30.

Rather than challenge any of Urban Trust's evidence or point to evidence of their own, the Skeltons focus on Urban Trust's inability to produce legally sufficient indorsements.[4] Their argument appears to be based on two unfounded assumption regarding what Urban Trust must present to show entitlement.

First, the Skeltons seem to argue that Urban Trust needed to prove that MCMCAP was a holder in light of the multiple transfers that occurred. They claim the bankruptcy court's statement "that the 'note may be transferred multiple times without indorsement, so long as each transfer was made [in accordance with § 3.203],' is an inaccurate statement of Texas law," because "[t]his is not a case where there was a single or simultaneous transfer of the deed of trust and note to a single recipient." Appellees' Br. 11-12. But the Skeltons cite no legal authority for this proposition. In contrast, the allegedly inaccurate statement made by the bankruptcy court is supported by the UCC's Permanent Editorial Board's commentary, which provides guidance on how the UCC's language, as adopted in Texas, applies in these very circumstances. *See* R. at 15 (citing Report of the Permanent Editorial Board for the Uniform Commercial Code ("PEB Report"), Application of the Uniform Commercial Code to Selected Issues Relating to Mortgage Notes 5-6 (2011)). Specifically, the commentary explains that "if a holder . . . transfers the note to another person, that other person

---

[4] *See, e.g.*, Appellants' Br. 17 ("The allonge [dated August 2, 2011] was never affixed to the note by Greenpoint, and it was therefore never a valid allonge under Texas law"); *id.* at 20 ("[A]s of July 16, 2009, [Urban Trust] did not have a valid indorsement (via an allonge or otherwise) that transferred the Note in its favor.").

(the transferee) obtains from the holder the right to enforce the note even if the transferee does not become the holder . . . . [and] a subsequent transfer will result in the subsequent transferee being a person entitled to enforce the note." PEB Report 5-6. Thus, contrary to the Skeltons' assertions, Texas law permits Urban Trust to establish entitlement through sequential § 3.203 transfers, regardless of whether those transfers have been properly indorsed.

Second, the Skeltons also appear to argue that Urban Trust must establish each link in the Note's chain of title through "heightened" proof, such as the original allonge transferring the Note from Greenpoint to MCMCAP. Appellants' Br. 12. But that is not the law. Indeed, Texas courts consistently hold that "the transfer of a note may be proved by testimony rather than by documentation." *Leavings*, 175 S.W.3d at 309 (citing *Priesmeyer v. Pacific Southwest Bank, F.S.B.*, 917 S.W.2d 937, 939 (Tex. App. 1996); *Christian v. Univ. Fed. Sav. Ass'n*, 792 S.W.2d 533,534 (Tex. App. 1990)); *see also Bean v. Bluebonnet Sav. Bank*, 884 S.W.2d 520, 523 (Tex. Civ. App. 1994) (affidavit testimony with a true and correct copy of a note proves ownership for summary judgment purposes). And in this case, Urban Trust presented more than enough evidence showing that Greenpoint transferred the right to enforce the Note to MCMCAP. The burden, thus, shifted to the Skeltons, who offered nothing that would create a genuine factual dispute regarding the Greenpoint-to-MCMCAP transfer. The bankruptcy court, therefore, did not error in concluding that MCMCAP, as a matter of law, acquired entitlement to enforce the Note before selling it to Urban Trust.

3.      The Note's Transfer from MCMCAP to Urban Trust

Having determined that MCMCAP undisputedly acquired the right to enforce the Note, the Court turns to the second transaction at issue—the Note's sale from MCMCAP to Urban Trust. As a reminder, the ultimate issue here is whether Urban Trust was entitled "to enforce the [Note] when

-15-

loss of possession occurred." TEX. BUS. & COM. CODE § 3.309(a)(1)(A).

Urban Trust submitted an affidavit from a principal and custodian of records of MCMCAP averring that it "sold and transferred its interest in a number of loans including the Skelton Loan to Urban Trust." R. at 1091. Urban Trust further provided two undated allonges identifying the Note and executed by MCMCAP, one in blank and one made payable to Urban Trust. *Id.* at 983-984. It also presented affidavits indicating that MCMCAP delivered the Note via Federal Express to Urban Trust on July 16, 2009, and that Urban Trust received and took possession of the Note on July 17, 2009. *Id.* at 727, 1071-72, 1092. This evidence, which the Skeltons did nothing to refute, leaves no doubt that MCMCAP transferred the Note to Urban Trust on July 17, 2009 with the intent to give Urban Trust enforcement rights. This transfers vested Urban Trust with the right to enforce the Note under Texas, regardless of whether "a valid indorsement (via an allonge or otherwise)" was provided. Appellants' Br. 20.

Moreover, the Note was lost sometime *after* the transfer from MCMCAP to Urban Trust was completed on July 17, 2009. R. at 1040. Thus, no genuine dispute existed with respect to Urban Trust's right to enforce the Note "when loss of possession occurred." TEX. BUS. & COM. CODE § 3.309(a)(1)(A). Accordingly, summary judgment was appropriately granted on Skeltons' claim that Urban Trust was not entitled to enforce the Note. *See id.* § 3.301. And since Skelton admittedly signed the Note and never cured the default after failing to make payments, the bankruptcy court properly entered final judgment permitting Urban Trust to foreclose on the Property.

B.     *Fraudulent and Negligent Misrepresentation*

Skelton's third and fourth causes of action allege that Urban Trust fraudulently and/or negligently misrepresented that it possessed the *original* Note, which Skelton purportedly "relied on

. . . to his detriment . . . when he was unable to refinance the Greenpoint Note with Pavillion Bank." R. at 530-31. The bankruptcy court entered summary judgment on both of these claims for a number of reasons, only one of which the Court will discuss. Specifically, the Court, as follows, agrees with the bankruptcy court that no genuine dispute exists regarding Skelton's unjustifiable reliance on Urban Trust's supposed misrepresentations. *See* R. at 19, 20.

Justifiable reliance is an essential element of Skelton's two misrepresentation claims. *See Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) ("Both fraud and negligent misrepresentation require that the plaintiff show actual and justifiable reliance."). The Fifth Circuit has explained that:

> The justifiable reliance element . . . does not require a plaintiff to demonstrate reasonableness. However, a [] plaintiff cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Moreover, a person may not justifiably rely on a representation if there are red flags indicating such reliance is unwarranted.

*Lewis v. Bank of Am. NA*, 343 F.3d 540, 546-47 (5th Cir. 2003) (internal citations and quotation marks omitted).

Here, the bankruptcy court correctly concluded that Skelton did not justifiably rely on Urban Trust's supposed misrepresentations. Skelton testified that he received Urban Trust's Lost Note Affidavit in November 2010, and all but admits in his testimony that he knew from this correspondence that the Note was lost. R. at 1333, 1335. At the very least, Urban Trust's Lost Note Affidavit was a "red flag" that bars Skelton from claiming justifiable reliance after November 2010. *See Lewis*, 343 F.3d at 546 (citing *In re Mercer*, 246 F.3d 391, 418 (5th Cir. 2001)). But Skelton admits that he did not even begin discussing refinancing the Note with Pavillon Bank until

December 2010. R. at 1333. Since these refinancing discussions are where Skelton purportedly relied on the misrepresentations, Skelton cannot reasonably claim that he justifiably relied on the false statements purportedly made by Urban Trust given his knowledge of a "red flag" in November 2010. Therefore, summary judgment was properly granted on Skelton's two misrepresentation claims.

## V.

## CONCLUSION

For the foregoing reasons, the Court finds, upon *de novo* review, that summary judgment was appropriately granted on each of the Skeltons' claims, and by extension, final judgment on foreclosure was warranted. Accordingly, the Court **AFFIRMS** the bankruptcy court's August 5, 2013 memorandum opinion and order granting the Appellees' summary judgment motion and its November 5, 2013 Final Judgement on Foreclosure.

**SO ORDERED.**

**Dated: August 25, 2014.**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

-18-